Argued and submitted May 30, 2014, affirmed March 25, petition for review allowed October 22, 2015 (358 Or 145)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JUSTIN JAMES SCHILLER-MUNNEMAN,
*Defendant-Appellant.*

Josephine County Circuit Court
11CR0002; A152061

346 P3d 636

Anne K. Fujita Munsey, Senior Deputy Public Defender, argued the cause for appellant. On the brief were Peter Gartlan, Chief Defender, and Susan Fair Drake, Senior Deputy Public Defender, Office of Public Defense Services.

Peenesh Shah, Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Armstrong, Presiding Judge, and Nakamoto, Judge, and Egan, Judge.

NAKAMOTO, J.

## NAKAMOTO, J.

Defendant appeals a judgment convicting him of first-degree rape, ORS 163.375, raising three assignments of error. At defendant's trial, over defendant's objection, the trial court allowed the state to discuss and introduce evidence of text messages that the victim sent to defendant at the police's request, as well as defendant's nonresponse to those messages. In his first assignment of error, defendant contends that the trial court erred in denying his motion to suppress that evidence, arguing that the state's use of his silence as substantive evidence at trial violated his right to remain silent under Article I, section 12, of the Oregon Constitution. In his second assignment of error, defendant argues that the trial court erred in admitting the text messages and defendant's nonresponse to the messages as adoptive admissions under OEC 801(4)(b)(B). We reject without discussion defendant's third assignment of error, in which he argues that the trial court erred in instructing the jury that it could find him guilty by a nonunanimous verdict. *State v. Cobb*, 224 Or App 594, 198 P3d 978 (2008), *rev den*, 346 Or 364 (2009). For the reasons below, we affirm.

We review the denial of a motion to suppress for legal error and are bound by the trial court's factual findings that are supported by sufficient evidence in the record. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). When reviewing a trial court's evidentiary ruling that a statement fits within an exception to the hearsay rule, we apply a two-part standard of review. *State v. Cook*, 340 Or 530, 537, 135 P3d 260 (2006). We will uphold the trial court's preliminary factual findings for any evidence, but we review the trial court's ultimate legal conclusion about whether the hearsay statement is admissible for legal error. *Id.*

Defendant was charged with first-degree rape of the victim. The victim was a friend of defendant's who, to avoid driving while intoxicated after a New Year's Eve celebration, spent the night on defendant's couch. Other people were staying at the house that night, including defendant's girlfriend, Wanke. After everyone had gone to bed, defendant went downstairs and sexually assaulted the victim.

Later that morning, the victim exchanged text messages with Wanke and spoke with her on the phone. Eventually, the victim told Wanke that she had woken up to defendant raping her. In a text message to the victim, Wanke wrote, in part, that defendant "said he bla[c]ked out[.] *** [H]e wanted to know if you are going to the cops[.]" The victim did contact the police, and later that evening, she spoke with Detective Myers on the phone. Myers asked if the victim would send defendant text messages. The victim agreed, and Myers instructed her on what the messages should say. The victim sent defendant two text messages that evening. The first said, "I don't understand how this happened[.] [W]e've been friends for along [*sic*] time. [W]hy did [you] do that to me?" The second said, "I really want to know why? [I don't know] what to do but I was passed out[.] [W]hat made what [you] did ok?" Defendant did not respond to either message. Defendant was later arrested and charged with first-degree rape.

Before trial, the state had given defense counsel[1] copies of the text messages that the victim had sent defendant. However, it was not until the prosecutor's opening statement, in which the prosecutor told the jury that Myers had asked the victim to send the text messages, that defense counsel became aware of the police involvement in the messages. Upon learning that fact, defense counsel moved to suppress that evidence and for a mistrial.[2] Defense counsel argued that, in telling the jury about defendant's nonresponse to the text messages, the state was impermissibly using defendant's constitutional right to remain silent against him. The state responded that there was no constitutional violation because the text messages, from the perspective of defendant, had come from a woman whom he had known for years; it was not a situation in which defendant

---

[1] Defendant was represented by two attorneys at trial.

[2] In addressing the court, defense counsel stated that, had she known that the police were involved in sending the text messages, she would have prepared a motion to suppress. She then stated that she was "not prepared to do an oral motion to suppress at this time[.]" The trial court nonetheless understood defense counsel to be moving to suppress the evidence, as well as moving for a mistrial. Defense counsel also argued that the state's withholding of that information was a *Brady* violation. On appeal, defendant does not assign error to the court's denial of the mistrial motion or the court's ruling regarding the alleged *Brady* violation.

had told the detective that he was not talking to the police. The trial court denied defendant's motions, ruling that it was not significant that the text messages were sent at the request of the police.

Defendant maintained his objections during the state's direct examination of the victim. The victim testified that Myers had asked her if she would send text messages to defendant's phone and that she had agreed to do so. She further testified that Myers had told her what to say in the messages. The prosecutor then had her describe the content of the first text message, and she testified that she received no response. The prosecutor followed the same line of questioning for the second text message. The victim then said several more times that defendant had not responded after relating that, at the time of the assault, she and her husband had been friends with defendant for six years and that she had spent time with defendant as a friend. The prosecutor returned to the text messages a final time after the court admitted two photographs of the messages, and the victim repeated that defendant had not responded to them. Defendant objected at each juncture.

At that point, after the jury left the courtroom, the court addressed defense counsel's objections to the victim's testimony about the text messages:

"THE COURT: Alright, I've been assuming that the objection to the text messages and the non response has been on the same basis as what was discussed earlier outside the presence of the jury, but I, I, it occurs to me that I should probably ask and make sure that there's no additional grounds for any objection.

"[DEFENSE COUNSEL]: Judge, we'd just like to expand on that a bit, and Mr. Graham will do that if that's alright with the Court.

"* * * * *

"[DEFENSE COUNSEL]: Your Honor, one, there was subterfuge by, by the State to get that information, and I anticipate that the State will, will then use that silence as an admission. And it's one thing for the State to come in and say, 'Well, he didn't respond.' There's no explanation of why he didn't respond, it's just he didn't respond. It could

have gone into * * * a device and be * * * locked in the car, it could be in a number of places. * * * And, and they're, they're in a position now to try to argue, and I anticipate they will try to argue that that's an admission. * * * [I]f the Court's going to allow it in, then the Court should say, 'You may not use it as a re, as an admission by silence.' In the classic situation an admission by silence is where two people are face to face and one says, 'You ran the red light' and the other person stands mute, mute. This is, this can't be analogous to that same situation Your Honor, and I want the Court, I would like to ask the Court to give an instruction and * * * admonish the State that it may not argue an admission by silence in this circumstance. * * *"

The prosecutor responded that both parties could argue the inferences that the jury should make regarding the evidence that defendant had not responded to the victim's text messages and that the photographs of the messages were offered "just to show that the messages were sent, period[.]" The prosecutor then stated the inference that he would argue to the jury and acknowledged that the state would ask the jury to infer that defendant's failure to respond was an admission of guilt. The court allowed the parties an opportunity to submit written briefing.

In its ruling from the bench the next day, the court explained that it thought that there were two issues presented by the text messages: (1) whether defendant's nonresponse was an admission by silence and therefore admissible as nonhearsay and (2) whether defendant's right against self-incrimination was implicated by the evidence. As to the first issue, the court ruled that, because it was unclear that, in not responding to the text messages, defendant was adopting them, there was no adoptive admission. As to the constitutional issue, the court concluded that there was no problem with the state using defendant's silence and arguing an inference of guilt from it because defendant was not in custody and had not been given *Miranda* warnings at the time. The court further explained that there were a number of nonprejudicial inferences that could be drawn from defendant's silence.

Defense counsel then argued that, because the court had ruled that defendant's failure to respond was not an

adoptive admission of the statements in the text messages, the text messages were inadmissible. The court explained that defendant's failure to respond was not a statement and that the text messages were not inadmissible hearsay. Although defense counsel protested that the text messages were hearsay, the court did not alter its ruling.

Defendant later testified at trial. Defendant admitted receiving the text messages but explained that he had not responded to them because "they were weird" and that "they didn't make sense and I just ignored them." The jury found defendant guilty of first-degree rape.

In his first assignment of error, defendant argues that the trial court erred in denying his motion to suppress the text messages and his nonresponse to those messages. Defendant argues that, because the police told the victim to send the text messages, the questions and accusations contained in the messages constituted police questioning. From that proposition, defendant reasons that, when he did not respond to those text messages, he was exercising his constitutional right to remain silent under Article I, section 12, of the Oregon Constitution. Accordingly, defendant contends, the state's subsequent use of that silence as substantive evidence at trial was an impermissible comment on his right to remain silent, and that evidence should have been suppressed. *See State v. Larson*, 325 Or 15, 22, 933 P2d 958 (1997) (stating that "the Oregon Constitution does not permit a prosecutor to draw the jury's attention to a defendant's exercise of the right to remain silent"); *State v. Smallwood*, 277 Or 503, 505-06, 561 P2d 600, *cert den*, 434 US 849 (1977) ("There is no doubt that it is usually reversible error to admit evidence of the exercise by a defendant of the rights which the constitution gives him if it is done in a context whereupon inferences prejudicial to the defendant are likely to be drawn by the jury.").

The state responds that, under the Oregon Supreme Court's decision in *State v. Davis*, 350 Or 440, 256 P3d 1075 (2011), defendant did not have a constitutionally protected right to remain silent when the victim sent him the text messages, because he was not in custody or in compelling circumstances; therefore, the trial court did not err in

allowing the state to introduce evidence of defendant's non-response to the messages. We agree with the state that the major premise of defendant's argument—that his right to remain silent under Article I, section 12, was implicated—is incorrect.

Article I, section 12, provides that a defendant shall not "be compelled * * * to testify against himself." In *Davis*, the Supreme Court considered "whether, under Article I, section 12, a suspect's invocation of a right to remain silent without the assistance of counsel *at a time that he or she is not in custody or in compelling circumstances* precludes the police from nevertheless attempting to obtain incriminating information from that suspect." 350 Or at 446-47 (emphasis in original). The Supreme Court concluded that the right is not implicated in noncompelling circumstances. *Id.* at 459.

The facts in *Davis* bear some similarity to those at issue here because, in that case, the police also instructed the victim concerning certain communications she had with the defendant. In *Davis*, the defendant's stepdaughter reported to the police that the defendant had been sexually abusing her. 350 Or at 442. A detective contacted the defendant by phone to discuss the allegations, and the defendant asked if there was a warrant for his arrest and if he needed an attorney. *Id.* The detective told him that he was not "wanted" and that it was up to the defendant to decide if he wanted an attorney. *Id.* A few weeks later, the detective received a letter from the defendant's attorney, stating that the attorney was aware of the allegations against the defendant, that he was invoking the defendant's right to remain silent, and that the detective should not directly contact the defendant. *Id.* at 443. Eight months later, the victim told the detective that the defendant had contacted her via her instant-messaging service. The detective arranged for the victim to come to his office to engage in monitored instant-message conversations with the defendant. The detective instructed the victim about the persona that she should portray during the conversations and, to some extent, told her what to say. *Id.* During those conversations, the defendant made several incriminating statements.

At trial, the defendant sought to suppress the evidence derived from his monitored conversations with the victim. He argued that, because he had invoked his right to counsel and right to remain silent eight months before, the police could not thereafter communicate with him except through counsel. *Id.* at 443-44. The trial court agreed and granted the defendant's motion to suppress on the ground that the police had violated the defendant's Article I, section 11, right to counsel and his Article I, section 12, right to remain silent when they questioned the defendant, through the victim, without his attorney present. *Id.* at 444. We affirmed, because the police knew that the defendant had asserted his right to remain silent. *State v. Davis*, 234 Or App 106, 113, 227 P3d 204 (2010), *rev'd*, 350 Or 440, 256 P3d 1075 (2011).

On review, the Supreme Court noted that, although several of its cases had alluded to the history of Article I, section 12, none had engaged in the analysis that *Priest v. Pearce*, 314 Or 411, 840 P2d 65 (1992), requires to address the constitutional issue presented in that case. *Davis*, 350 Or at 446. Accordingly, the court analyzed the provision's text, its historical context, and the case law that had construed it to determine whether, "as defendant contends and the Court of Appeals held, Article I, section 12, prohibits police from obtaining incriminating statements from a defendant in the absence of compelling circumstances." *Id.*

Beginning with the text of Article I, section 12, the court noted that, "[t]aken at face value, the provision does not state a broad 'right to remain silent.' Rather, it states a much more specific right not to be 'compelled' to testify against himself or herself." *Davis*, 350 Or at 447. The court's examination of the historical underpinnings of Article I, section 12, revealed a similar emphasis on freedom from compulsion:

"[T]he evidence of the historical circumstances of the adoption of Article I, section 12, in the mid-nineteenth century reveals that the constitutional right against self-incrimination generally was understood to limit the means by which the state may obtain evidence from criminal defendants by prohibiting compelled testimony. In our examination of the historical record, we have found a complete

absence of evidence of the recognition of a constitutionally protected 'right to remain silent' that exists independent of compelling circumstances."

*Id.* at 453-54 (footnote omitted). Turning then to Oregon case law construing that provision, the court noted that, from very early on, its cases held that "the focus of Article I, section 12, is whether a defendant's testimony was compelled, or, conversely, whether it was voluntarily given." *Id.* at 454. In that regard, the court further noted that

"[t]his court has never recognized an obligation under Article I, section 12, of police to inform a person of a right to remain silent in the absence of custody or other compelling circumstances. Likewise, the court has never held that an individual's invocation of a right to remain silent in the absence of custody or other compelling circumstances precludes police from attempting to obtain incriminating information from that individual."

*Id.* at 459.

With those principles in mind, the court rejected the defendant's invitation to hold that "his invocation of a right to remain silent some months before he was placed in custody or in circumstances that could be regarded as compelling precluded police from obtaining incriminating information from him during that time." *Davis*, 350 Or at 459. The court noted that there was no suggestion that the defendant was in custody or otherwise compelling circumstances when the police informed him of the allegations, when he attempted to invoke his right against self-incrimination, or when the pretextual communications were made. *Id.* at 460-61. Nor was there any suggestion that the defendant's statements were "induced by threats or promises or that in any other way defendant's self-incriminating statements were not voluntarily made." *Id.* at 461. Accordingly, there was no basis for concluding that the defendant's statements were obtained in violation of Article I, section 12. *Id.*

We reject defendant's argument that *Davis* does not apply to this case. He contends that the court in *Davis* considered only whether a person's pre-arrest invocation of the right to remain silent prevented the police from further questioning the person and the admissibility of any

resulting statement at trial, but that this case is different because it concerns whether the state can comment on a defendant's exercise of his constitutional right to remain silent. Although it is true that the Supreme Court emphasized that the scope of the issue before it in *Davis* was narrow and involved circumstances distinct from those in this case, we cannot ignore the import of the court's analysis of Article I, section 12. As noted above, the right to remain silent in Article I, section 12, is focused on preventing *compelled* testimony:

> "[I]f there is a right to remain silent that is guaranteed by Article I, section 12, it is a right to insist that the police refrain from interrogation after a person who is in custody or otherwise in compelling circumstances has invoked the right to remain silent."

*Davis*, 350 Or at 459. Implicit in that holding is the idea that, absent custody or compelling circumstances, the right to remain silent under Article I, section 12, is not implicated. Thus, *Davis* governs on the question whether defendant could rely on Article I, section 12, to prevent the state from introducing evidence of his nonresponse to the text messages.

In addition to arguing that *Davis* does not control, defendant relies on two of our decisions from the 1980s: *State v. Marple*, 98 Or App 662, 780 P2d 772 (1989), and *State v. Pigg*, 87 Or App 625, 743 P2d 770 (1987). Defendant cites *Marple* for the proposition that we have held that "a criminal defendant may invoke his right to silence before his arrest and *Miranda* warnings, and the state may not introduce that evidence against him." Defendant's argument, however, rests on an expansive reading of our holding in *Marple* that conflicts with the holding in *Davis*.

In that case, a police officer saw two men sitting in a pickup truck near a tavern. *Marple*, 98 Or App at 664. The officer watched the men from a distance and saw the passenger, the defendant, holding a mirror with powder on it. The officer approached the pickup, identified himself as a police officer, and shined his light into the pickup. *Id.* The officer told the men to keep still and keep their hands in plain sight and called for backup. When another officer arrived, the first

officer asked the defendant to step out of the pickup and searched him for contraband. The officer found two bindles, one of which contained a controlled substance. The officer asked the defendant, "Is this yours? What is it?" The defendant responded, "I'd rather not say." *Id.* At his trial, the defendant argued that his answer to the officer's questions was an invocation of his constitutional right to remain silent and, accordingly, the state could not bring it to the jury's attention. *Id.* The trial court overruled the objection and allowed the officer to testify about the defendant's statement. *Id.*

On appeal, the state argued that the defendant's answer to the officer's question was not an invocation of his right to remain silent, but merely was a response to the question asked. *Marple*, 98 Or App at 666. We rejected that argument, and held that, by his statement, the defendant was indicating that he wanted to remain silent in response to the officer's question; therefore, the state could not use that refusal against him. *Id.* We noted in a footnote that the state had argued at trial that the defendant could not assert his constitutional rights because he was not in custody but that, on appeal, the state had conceded that a person not in custody can invoke the right to remain silent. *Id.* at 666 n 2. We agreed with the state's concession and stated that "[a] person *not in custody* can * * * assert the right to remain silent under Article I, section 12." *Id.* (emphasis added).

Relying on *Marple*, defendant argues that, "[i]f a suspect can validly invoke his right to silence during the investigation stages of a criminal prosecution, it follows that the state cannot permissibly comment on that invocation." In *Marple*, however, we did not hold that a suspect can invoke his or her right to remain silent during the investigation stages of a criminal investigation. At most, we recognized that a suspect need not be in custody to invoke that right, which is consistent with the Supreme Court's conclusion in *Davis* that the right under Article I, section 12, only applies if the suspect is in custody *or* compelling circumstances. In *Marple*, though the defendant was not in custody during the police questioning, he was in circumstances that could be considered compelling. Moreover, were *Marple* understood to stand for the proposition defendant urges, the Supreme Court limited that holding through its decision in *Davis*.

We also conclude that *Pigg* is inapt. In that case, a child reported that the defendant had sexually abused her, and, although the defendant told the investigating officer that he was busy with final exams and would call back to discuss the matter further, on the advice of counsel, he never called the officer. 87 Or App at 627. The trial court admitted that evidence over the defendant's objections under Article I, section 12, *and* OEC 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice * * *."). *Id.* On appeal, we resolved the issue on OEC 403 grounds and did not address whether the state was allowed, under Article I, section 12, to discuss the defendant's pre-arrest silence. *Id.* at 629. Our holding in *Pigg* does not imply that there was a constitutional problem in allowing the evidence of the defendant's pre-arrest silence; instead, we concluded that the evidence "was of little probative value." *Id.* at 628.

In sum, as the Supreme Court noted in *Davis*, a person "always may invoke a 'right to remain silent' and refuse to speak with police without the presence of counsel." 350 Or at 446. However, unless the person is in custody or compelling circumstances when he or she refuses to speak to police, the protections of Article I, section 12, do not apply. In this case, there was no suggestion that defendant was in custody or compelling circumstances when he received the text messages. Thus, the trial court did not err by allowing the prosecutor, over defendant's objection based on Article I, section 12, to elicit testimony and to make an argument concerning defendant's failure to respond to the text messages.

In his second assignment of error, defendant argues that the trial court erred in admitting the text messages and defendant's nonresponse to the messages as adoptive admissions. He contends that, "[a]lthough the state initially offered the messages for an alleged non-hearsay purpose, it did not use them in that manner. Instead, the state used the messages to prove the truth of the contents *via* defendant's purported adoption of those contents." Defendant reasons that the messages should have been excluded because defendant's silence does not qualify as an adoptive admission under OEC 801(4)(b)(B).

We note, however, that the trial court did not admit the text messages on the basis that defendant had adopted the messages through his silence. Indeed, defendant recognizes that fact in his brief, noting that "[t]he trial court found that the evidence was at best ambiguous and did not meet the requirements of an adoptive admission."

Nevertheless, the state understands defendant's argument to more broadly be that the text messages and his nonresponse to them were inadmissible hearsay, an objection that defendant asserted in the trial court. The state responds to that argument by contending that none of the evidence that defendant challenges was hearsay: First, the victim's text messages were not "statements" under the hearsay rule because they were questions and because the victim adopted the questions in her testimony. Second, defendant's nonresponse to the messages was also not a "statement" under the hearsay rule, and, even if it were, it would be an admission by a party opponent under OEC 801(4)(b)(A).

We first conclude that, even assuming that the text messages are "statements" under the hearsay rule, they were not being offered to prove the truth of the matters asserted therein and, therefore, are not hearsay. Hearsay is an out-of-court statement offered to prove the truth of the matter asserted and is generally inadmissible unless the statement is excluded from the definition of hearsay or falls within an exception to the hearsay rule. OEC 801; OEC 802. Here, the text messages that the victim sent to defendant said, "I don't understand how this happened[.] [W]e've been friends for along [*sic*] time[.] [W]hy did [you] do that to me?" and "I really want to know why? [I don't know] what to do but I was passed out[.] [W]hat made what [you] did ok?" The prosecutor told the court that he was not offering the messages for their truth and that he intended to use defendant's nonresponse to the messages to argue inferences to the jury regarding defendant's choice in not responding to the messages. Because the state was not offering the text messages to prove the truth of their contents, they were not hearsay.

As to defendant's nonresponse, the state first argues that defendant took the position that his nonresponse was not intended as an assertion, and so it was not a "statement"

for purposes of the hearsay rule. *See* OEC 801(1)(b) (a "statement" includes "[n]onverbal conduct of a person, if intended as an assertion"). Relatedly, the state argues that his nonresponse was not a statement because it constituted "context" for the text messages. Finally, the state argues that, assuming that defendant's nonresponse was a statement under the hearsay rule, a party's statement offered against that party is excluded from the definition of hearsay as an admission. *See* OEC 801(4)(b)(A) (a statement is not hearsay if it is "offered against a party" and is that party's "own statement, in either an individual or a representative capacity"). We agree with the state that, even if the nonresponse is viewed as some type of statement by defendant, such a statement is not hearsay. The trial court did not err by rejecting defendant's hearsay objection.

Affirmed.