808 June 30, 2016 No. 43

IN THE SUPREME COURT OF THE
STATE OF OREGON

STATE OF OREGON,
*Respondent on Review,*

*v.*

JUSTIN JAMES SCHILLER-MUNNEMAN,
*Petitioner on Review.*

(CC 11CR0002, CA A152061, SC S063526)

On review from the Court of Appeals.*

Argued and submitted March 4, 2016.

Anne Fujita Munsey, Deputy Public Defender, Salem, argued the cause and filed the brief for the petitioner. With her on the brief was Ernest G. Lannet, Chief Defender, Office of Pubic Defense Services.

Peenesh Shaw, Assistant Attorney General, Salem, argued the cause and submitted the brief for the respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Paul L. Smith, Deputy Solicitor General.

Before Balmer, Chief Justice, Walters, Landau, Baldwin, Brewer, Justices, and Hadlock, Justice pro tempore.**

WALTERS, J.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

_____

* Appeal from Josephine County Circuit Court, Pat Wolke, Judge. 270 Or App 22, 346 P3d 636 (2015).

** Nakamoto, J., did not participate in the consideration or decision of this case.

**WALTERS, J.**

Defendant was charged with first-degree rape of the victim, a friend who had spent the night on defendant's couch after an evening of drinking. The victim contacted the police following the incident, and Detective Myers asked the victim if she would send defendant text messages to "try to get [defendant] to make a comment about what had happened between the two of them." The victim agreed, and Myers instructed her on the content of the messages. The victim sent defendant two text messages. The first said, "I don't understand how this happened[.] [W]e've been friends for [a long] time[.] [W]hy did [you] do that to me?" The second message said, "I really want to know why? [I don't know] what to do but I was passed out[.] [W]hat made what [you] did ok?" Defendant did not respond to either message.

At trial, defendant challenged the admissibility of the text messages and his nonresponse on both constitutional and evidentiary grounds. The trial court concluded that neither objection was well taken, and the jury found defendant guilty. The Court of Appeals affirmed. *State v. Schiller-Munneman*, 270 Or App 22, 24, 346 P3d 636 (2015). For the reasons that follow, we do not reach defendant's constitutional challenge, but we conclude that the text messages and defendant's nonresponse constituted inadmissible hearsay, and that the trial court erred in admitting them. We reverse and remand for further proceedings.

I.

We allowed defendant's petition for review to address his argument that admission of the text messages and his nonresponse at trial violated his right to remain silent under Article I, section 12, of the Oregon Constitution. Article I, section 12, provides: "No person shall be *** compelled in any criminal prosecution to testify against himself."

Defendant argues that, because the victim sent the text messages at the request of the police, the questions contained in those messages constituted police interrogation. Thus, defendant contends, when he did not respond to the messages, he was exercising his Article I, section 12, right

to remain silent, and the use of that silence as substantive evidence of guilt at trial was therefore an impermissible comment on his exercise of that right. *See State v. Larson*, 325 Or 15, 22, 933 P2d 958 (1997) (stating that "the Oregon Constitution does not permit a prosecutor to draw the jury's attention to a defendant's exercise of the right to remain silent"); *State v. Smallwood*, 277 Or 503, 505-06, 561 P2d 600, *cert den*, 434 US 849 (1977) ("There is no doubt that it is usually reversible error to admit evidence of the exercise by a defendant of the rights which the constitution gives him if it is done in a context whereupon inferences prejudicial to the defendant are likely to be drawn by the jury.").

The state responds that *State v. Davis*, 350 Or 440, 256 P3d 1075 (2011), provides contrary controlling authority. *Davis*, the state contends, stands for the proposition that a defendant does not have a constitutionally protected right to remain silent when the defendant is not in custody or otherwise in compelling circumstances at the time that the defendant is questioned.

In *Davis*, a police detective told the defendant that his stepdaughter had accused him of sexual abuse. *Id*. at 442. Although the defendant had not been arrested, he hired an attorney. *Id*. at 442-43. The attorney sent the detective a letter invoking the defendant's right to remain silent. *Id*. at 443. Eight months later, the defendant contacted the victim through her instant messaging service. *Id*. The detective asked the victim to engage in monitored instant message conversations with the defendant, and the victim agreed. *Id*. The detective directed the victim to say things that might elicit incriminating statements. *Id*. During three instant message conversations and two monitored phone calls, the defendant made incriminating statements, which the detective used to obtain a search warrant. *Id*. The defendant moved to suppress the evidence obtained through the monitored conversations as well as the evidence gained during the warranted search, arguing that, "because he had invoked his constitutional rights to counsel and to remain silent eight months earlier, the police thereafter were obligated not to communicate with him except through counsel." *Id*. at 443-44.

Thus, in *Davis*, the court's task was to determine whether the invocation of the right to remain silent "at a time that [the suspect] is not in custody or in compelling circumstances precludes the police from nevertheless attempting to obtain incriminating information from that suspect." *Id*. at 446-47 (emphasis omitted). Recognizing that "[a]n individual always may invoke a 'right to remain silent' and refuse to speak with police without the presence of counsel," *id*. at 446, the court held that an invocation of that right in noncompelling circumstances does not preclude police from attempting to obtain incriminating information from a defendant at a later time when the defendant again is not in custody or compelling circumstances, *id*. at 459.

Our task in this case is different. Unlike the defendant in *Davis*, defendant in this case did not answer the questions asked; he remained silent. Neither *Davis* nor any other case from this court expressly addresses whether, absent custody or compelling circumstances, a defendant's invocation of the right to silence may be introduced at trial as substantive evidence of the defendant's guilt. Nor has the United States Supreme Court answered that question under the Fifth Amendment.[1] However, some federal circuit courts have considered the admissibility of a defendant's invocation of the right to silence in the circumstance in which that evidence is otherwise admissible under the rules of evidence. Some courts have held that, even in the absence of custody or compelling circumstances, a defendant's invocation of the right to silence may not be admitted as substantive evidence of the defendant's guilt. *See U.S. ex rel Savory v. Lane*, 832 F2d 1011, 1017-18 (7th Cir 1987) (right to remain silent attaches pre-arrest, pre-*Miranda* and not admissible in prosecution's case-in-chief); *Coppola v. Powell*, 878 F2d 1562, 1568 (1st Cir 1989) (same); *U.S. v. Burson*, 952 F2d

---

[1] In *Salinas v. Texas*, __ US __, 133 S Ct 2174, 2180, 186 L Ed 2d 376 (2013), the Supreme Court concluded that the defendant had not invoked the Fifth Amendment privilege against self-incrimination, and, therefore, the Court did not reach the question of whether defendant's silence would be admissible if defendant had invoked the right to silence. In that case, the defendant "[l]ooked down at the floor, shuffled his feet, bit his bottom lip, cl[e]nched his hands in his lap, [and] began to tighten up" in response to police questioning. *Id*. at 2178 (internal quotation marks omitted). In *Jenkins v. Anderson*, 447 US 231, 240, 100 S Ct 2124, 65 L Ed 2d 86 (1980), the Supreme Court decided that pre-arrest silence may be admitted to impeach a defendant who takes the stand.

1196, 1200 (10th Cir 1991) (same); *Combs v. Coyle*, 205 F3d 269, 283 (6th Cir 2000) (same). Others have reached the opposite result. *See U.S. v. Rivera*, 944 F2d 1563, 1568 (11th Cir 1991) (self-incrimination clause inapplicable to questioning that occurs pre-arrest and pre-*Miranda*); *U.S. v. Zanabria*, 74 F3d 590, 593 (5th Cir 1996) (same); *U.S. v. Oplinger*, 150 F3d 1061, 1066-67 (9th Cir 1998) (same).[2]

As noted, this court has not addressed whether, absent custody or compelling circumstances, a defendant's invocation of the right to silence in response to police questioning may be admitted as substantive evidence at trial. This court also has not addressed whether a defendant who remains silent must expressly invoke the right to silence, or whether, and under what circumstances, an invocation may be implied. Nor has this court decided whether invocation, express or implied, is necessary to trigger the protections of Article I, section 12. However, this is not the case in which to address those questions. As noted, those questions arise only in the circumstance in which a defendant's silence is otherwise admissible under the rules of evidence. For that reason, and because this court's practice is to construe and apply statutory sources of law before turning to constitutional provisions, [*Rico-Villalobos v. Guisto*](), 339 Or 197, 203, 118 P3d 246 (2005), we turn to defendant's evidentiary challenge to the admission of the text messages and his nonresponse. In this case, defendant's evidentiary challenge is dispositive.

## II.

At trial, defendant objected to the victim's text messages and defendant's nonresponse on hearsay grounds. The state responded that the evidence was admissible as an "adoptive admission" under OEC 801(4)(b)(B).

---

[2] For an in-depth discussion of the circuit split and the arguments on both sides (pre-*Salinas*), see Stefanie Petrucci, *The Sound of Silence: The Constitutionality of the Prosecution's Use of Prearrest Silence in Its Case-in-Chief*, 33 UC Davis L Rev 449 (2000); Meaghan Elizabeth Ryan, *Do You Have the Right to Remain Silent?: The Substantive Use of Pre-*Miranda *Silence*, 58 Ala L Rev 903, 914 (2007). For a discussion of the state of the federal law after *Salinas*, see Anna Strandberg, *Asking for It: Silence and Invoking the Fifth Amendment Privilege Against Self-Incrimination After Salinas v. Texas*, 8 Charleston L Rev 591, 614 (2014).

An adoptive admission is a "statement of which the party has manifested the party's adoption or belief in its truth[.]" OEC 801(4)(b)(B). "If a party manifests an *adoption* of a statement of another, the party is in the same position as if the party had personally made the statement. The party becomes the declarant, and the statement of the other person becomes the party's." *State v. Carlson*, 311 Or 201, 206-07, 808 P2d 1002 (1991) (emphasis in original) (footnote omitted). Whether a party's silence constitutes an adoptive admission presents a preliminary question of fact for the trial court. OEC 104(1); *Carlson*, 311 Or at 211. The court must examine the totality of the circumstances to determine, by a preponderance of the evidence, whether the party intended to adopt or approve the contents of the declaration. *Id*. at 207-09.

In this case, the trial court proceeded accordingly and found, as a matter of fact, that defendant's silence did not constitute an adoptive admission. The court reasoned that there were many possible explanations for defendant's failure to respond to the text messages. Having made that preliminary finding, the trial court should have ruled that the text messages and defendant's nonresponse were *not admissible* as an adoptive admission under OEC 801(4)(b)(B). Instead, however, the court told the parties that it would *admit* the evidence. Apparently not understanding the court's thinking, defendant inquired as to the relevance of the evidence and the basis on which it could be admitted. Defendant asked, "What's it being offered for?" "If the [s]tate's not offering it as an admission, then what's the grounds for offering it?" The state did not respond to that question; the state did not inform the trial court that the evidence was not hearsay for some other reason, such as that the evidence was not offered for its truth, or that the evidence fit within an exception to the hearsay rule.[3] Instead, the court responded. The court said that it would permit both sides to argue the meaning

---

[3] Earlier in the proceeding, the state had argued that the photographs of the text messages were admissible not for their truth, but "to show that the messages were sent, period, and not the content." However, the state did not reiterate that argument later in the proceeding, in response to defendant's question regarding the relevancy of the evidence, including defendant's nonresponse.

of defendant's nonresponse to the jury: The state could ask the jury to infer that defendant's silence was evidence of guilt; defendant could argue counter-inferences. Thus, although the trial court made a preliminary finding indicating that defendant did not intend to adopt the content of the messages, the court apparently admitted the evidence to permit the jury to infer that he did just that.

Defendant appealed and argued, as he had below, that the evidence was inadmissible hearsay. In response, the state did not contend that the evidence was admissible as an adoptive admission or that the trial court was correct to permit the jury to determine its probative value on the issue of defendant's guilt. Instead, the state contended that the victim's messages were not hearsay because they lacked assertive content and therefore were not "statements" for purposes of the hearsay rule. As to defendant's nonresponse, the state argued that even if defendant's nonresponse was a statement, it constituted an admission by a party opponent under OEC 801(4)(b)(A).

The Court of Appeals affirmed. *Schiller-Munneman*, 270 Or App at 24. As to defendant's nonresponse, the court agreed that even if defendant's nonresponse was a statement, it constituted an admission by a party opponent. *Id*. at 36. As to the messages, however, the court concluded that, even if they were "statements," they were admissible because the state had offered them, not for their truth, but to "argue inferences to the jury regarding defendant's choice in not responding to the messages." *Id*. at 35.

Before this court, defendant argues, as he did below, that the evidence at issue—both the messages and his nonresponse—constitutes inadmissible hearsay. The state, however, reframes its argument somewhat. As to the admissibility of defendant's nonresponse, the state reprises its argument in the Court of Appeals. But as to the messages, the state contends that the messages either included no assertive content or were offered, not for their truth, but to demonstrate "their effect on defendant."

Before we turn to the parties' arguments, we think it necessary to explain how we view the evidence—the victim's text messages and defendant's nonresponse. In these

circumstances, we conclude that the evidence must be considered in combination and as a whole. The reason is that neither aspect of the evidence is relevant without the other. Without the messages, defendant's lack of response is simply the absence of evidence. Without defendant's nonresponse, the messages have no probative value; the only evidentiary value that the state claims for the messages is to demonstrate their effect on defendant, and the only effect it claims is defendant's nonresponse.[4]

We begin with defendant's argument that the proffered evidence is inadmissible hearsay and the state's response that the evidence is not hearsay because the victim's messages have no assertive content. Hearsay is a "statement," other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. OEC 801(3). A "statement" is "[a]n oral or written assertion," or "[n]onverbal conduct of a person, if intended as an assertion." OEC 801(1).

The state's first argument is that the victim's messages contain questions, and that questions by definition are not assertions. The state contends that this court should adopt that categorical approach and that doing so would be consistent with the decisions of a number of federal appellate courts. The state cites *U.S. v. Love*, 706 F3d 832, 840 (7th Cir 2013), for the proposition that "overwhelming" federal precedent supports the conclusion that questions are not "statements." However, neither *Love* nor the other federal cases to which the state cites draw the bright line rule for which the state argues. Rather, those cases distinguish questions designed to elicit information and a response from questions intended as assertions. *Id*. Kirkpatrick likewise explains that a communication may be found to be an assertion even though phrased as a question "if it contains—expressly or impliedly—factual content that amounts to an assertion." Laird C. Kirkpatrick, *Oregon Evidence* § 801.01[3] [b], 699 (6th ed 2013). We therefore reject the state's argument that

_____

[4] We caution that that will not always be the case. There are instances in which statements to which there is no response have independent probative value. *See, e.g.*, *State v. Hren*, 237 Or App 605, 607-08, 241 P3d 1168 (2010) (statement admissible to show that defendant reasonably believed she could take item from store).

questions can never be assertions, and turn instead to the state's alternative argument that the questions in the text messages at issue in this case lack sufficient factual content to amount to assertions.

Again, as noted, the victim sent defendant two text messages. The first said,

> "I don't understand how this happened[.] [W]e've been friends for [a long] time[.] [W]hy did [you] do that to me?"

The second message said,

> "I really want to know why? [I don't know] what to do but I was passed out[.] [W]hat made what [you] did ok?"

Although the messages do not use the word rape, in context they assert that defendant did something wrongful to the victim against her wishes while she was "passed out." In the context of the state's argument that defendant raped the victim and defendant's concession that he and the victim had consensual sexual contact, the first message asserts that that contact was nonconsensual. The second message explicitly asserts that the victim was "passed out" at the time of the encounter, and implicitly asserts that defendant was the actor and that the victim was not a willing participant. We agree with defendant that the victim's text messages expressly or impliedly include assertions and therefore are "statements" for purposes of the hearsay rule.

The state's alternative argument is that, to the extent that the messages contain assertions, they were admissible, not for their truth, but to demonstrate their effect on the listener. *See* OEC 801(3) (defining hearsay as statement offered to prove truth of matter asserted). An out-of-court statement is not hearsay if it is offered to show the statement's effect on the listener, and the effect on the listener is relevant. Kirkpatrick, *Oregon Evidence* § 801.01[3] [d] at 705; *see State v. Hren*, 237 Or App 605, 607-08, 241 P3d 1168 (2010) (defendant's testimony that store attendant stated that she allowed defendant to keep item that defendant was charged with stealing not hearsay because offered to show defendant reasonably believed she could take disputed item); *State v. Smith*, 194 Or App 697, 704-05, 96 P3d 1234 (2004) (statement by defendant

that his father told defendant that detective claimed father would lose home if defendant contested charges admissible to show defendant had strong motive to make false confession). Here, the state argues that the text messages were offered to show their effect on defendant. That effect, the state argues, is relevant: An innocent person "would not have simply ignored those messages."

The problem with that argument is two-fold. First, if the state offered the evidence to prove that defendant was guilty, then the evidence was offered to prove the truth of the matter asserted—that defendant raped the victim. Second, if the state did not offer the evidence to prove that defendant was guilty, then the effect on defendant is not relevant.[5] Or, at the very least, the state does not explain another effect that the messages could have had on defendant, as a listener, that would be relevant in this case.

Another way of explaining our reasoning is that if silence is offered to show that the listener did not respond to statements in a way that a listener would be expected to respond if the listener disagreed with the statements, then it is offered to show, in effect, that the listener agreed with the statements. In that circumstance, the evidence must meet the requirements of an adoptive admission. If the party offering such evidence cannot demonstrate that the listener intended to adopt or approve the contents of the statements to which the listener did not respond, then the evidence is inadmissible. In this case, the state offered defendant's silence in response to the victim's messages to show that defendant did not react to the messages as an innocent person would have been expected to react. The trial court found that that evidence was not admissible as an adoptive

_____

[5] In a footnote in its brief, the state asserts that defendant did not argue at trial that his failure to respond to the text messages was not relevant, and that that argument is not preserved. We disagree. Defendant objected to the evidence—the texts and his nonresponse—on hearsay grounds. As we have explained, the state argued in response that defendant's silence was admissible as an adoptive admission. After the trial court found that defendant's silence was not an adoptive admission, defense counsel inquired as to the relevance of the evidence, asking, "What's it being offered for? If the [s]tate's not offering it as an admission, then what's the grounds for offering it?" In these circumstances, defendant's question was sufficient to raise the point we find dispositive: If the message and nonresponse were not being offered as an adoptive admission, what was the relevance of the evidence?

admission. Therefore, that evidence also was not admissible for its "effect on the listener" and should have been excluded.

### III.

The final question for our consideration is whether the admission of that evidence requires that we reverse and remand the case for a new trial. The state argues that reversal is not permitted here, because, even if the trial court erred in admitting the evidence, the error was harmless.

Article VII (Amended), section 3, of the Oregon Constitution states the standard that governs whether we must affirm a conviction despite the fact that legal error occurred during the trial. That provision provides, in part:

> "If the supreme court shall be of opinion, after consideration of all the matters thus submitted, that the judgment of the court appealed from was such as should have been rendered in the case, such judgment shall be affirmed, notwithstanding any error committed during the trial[.]"

Pursuant to that provision, we must affirm a judgment, despite any error that occurred at trial, if, after reviewing the record, we conclude that there was little likelihood that the error affected the jury's verdict. *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003). That conclusion is not a reflection of how we view the weight of the evidence of defendant's guilt, but rather a legal conclusion about the likely effect of the error on the verdict. *Id*.

The state contends that the error in this case was harmless because the messages and defendant's nonresponse had little probative value. The state argues that the messages were vague and did not necessarily establish criminal activity. According to the state, the messages did little more than support defendant's own testimony admitting to sexual contact with the victim and the victim's own testimony that the sexual contact occurred when she was passed out. Defendant responds that the evidence that the court admitted was different in nature from the testimony of the defendant and the victim; it could be understood as an admission of the charged conduct. Defendant also contends that the evidence was significant; the state referenced the messages and defendant's nonresponse during its opening

statement and elicited testimony about the messages from three different witnesses—the victim, Detective Myers, and defendant.

We agree with defendant's description of the role that the evidence played in this case. The fact that defendant and the victim had sex on the night in question was not at issue at trial. Both defendant and the victim testified that they had had sexual relations, and DNA evidence strongly suggested that defendant's sperm was present on the underwear and panty liner that the victim was wearing that night. Whether the sexual relations were consensual was what was debated. Both defendant and the victim testified, and they were the only witnesses to what had occurred. Other witnesses testified about what defendant and the victim had reported to them about the incident. Defendant's girlfriend, his girlfriend's father, and the mother of one of defendant's children all testified that defendant had maintained that he did not rape the victim. Witnesses for the state testified that defendant initially had stated that he had had no sexual contact with the victim at all and then later admitted that he and the victim had engaged in consensual sexual relations. No witnesses testified that defendant had admitted that he raped the victim.

Therefore, the text messages and defendant's nonresponse addressed the only contested issue in the case and were not duplicative of the other evidence of defendant's guilt. *See id.* at 33-34 (concluding that evidence was not harmless in similar circumstances). Moreover, the text messages and defendant's nonresponse were not passed over lightly. During the testimony of both defendant and the victim, the state repeatedly emphasized defendant's failure to respond to the text messages. While the victim was on the stand, the prosecutor asked a variation of the question "[d]id he respond to that?" five separate times. Even after the prosecutor had moved on to topics unrelated to the text messages, he returned to that evidence. At one point, the victim explained that her family and defendant's family often shared holidays together. The prosecutor then asked, "And no response to those text messages?" And while cross examining the defendant, the prosecutor turned immediately to the topic of the text messages, asking defendant to

again confirm his testimony on direct examination that he had received the text messages.

The state's theory of the case, as explained in its opening statement, was that defendant had raped the victim while she was "passed out." The text messages and the inference that an innocent person would have responded to them added significant support to that theory. We cannot conclude that there was little likelihood that the trial court's error in admitting the proffered evidence affected the verdict, and we therefore reverse and remand for further proceedings.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.