Argued and submitted February 26, 2015, affirmed February 23, petition for review denied June 29, 2017 (361 Or 645)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

VICTOR FERNANDO GONZALEZ-SANCHEZ,
*Defendant-Appellant.*

Washington County Circuit Court
C120191CR; A153708

391 P3d 811

Anne Fujita Munsey, Deputy Public Defender, argued the cause for appellant. With her on the opening brief was Peter Gartlan, Chief Defender, Office of Public Defense Services. With her on the supplemental brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section.

Doug M. Petrina, Assistant Attorney General, argued the cause for respondent. With him on the briefs were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Duncan, Presiding Judge, and Lagesen, Judge, and Flynn, Judge.

## DUNCAN, P. J.

In this criminal case, defendant appeals the trial court's judgment convicting him of one count of first-degree sodomy, ORS 163.405, and two counts of first-degree sexual abuse, ORS 163.427, based on incidents in Washington County involving one victim. On appeal, defendant assigns error to the trial court's denial of his pretrial motion to exclude evidence of incidents of sexual contact between defendant and the victim in Multnomah County. For the reasons explained below, we conclude that the trial court did not err in denying defendant's motion. Defendant also assigns error to the sentence that the trial court imposed on the sodomy count. We reject that argument without written discussion. Accordingly, we affirm.

Defendant was charged by indictment with one count of first-degree sodomy and one count of first-degree sexual abuse, based on an allegation that he had oral sex with the victim, who was 11 years old, at the victim's residence in Washington County. Defendant was also charged with one count of first-degree sexual abuse based on an allegation that he kissed the victim at a transit center in Washington County.

Prior to trial, defendant filed a motion to exclude evidence of other incidents of sexual contact between defendant and the victim. At the hearing on the motion, the state informed the trial court that it planned to present evidence of three incidents in Multnomah County, two involving oral sex and one involving anal sex. The Multnomah County incidents occurred a few weeks after the initial Washington County incident at the victim's residence. The victim did not report defendant's conduct until after the Multnomah County incidents.[1]

The state argued that evidence of the Multnomah County incidents was relevant for two reasons. First, the state argued that, under *State v. McKay*, 309 Or 305, 787 P2d 479 (1990), the evidence was relevant "to show this defendant's sexual interest in the victim." The state asserted that

---

[1] It is unclear from the record whether the incident at the transit center in Washington County occurred before or after the Multnomah County incidents.

the evidence was not impermissible "propensity evidence" because "*McKay* specifically says [this type of evidence] isn't relevant to show someone's propensity to commit a crime, but rather to show his sexual interest in this particular victim."

Second, the state argued that, under *State v. Zybach*, 308 Or 96, 775 P2d 318 (1989), the evidence was relevant "to show a reason why the victim had not reported the original sexual assault." The state asserted that evidence that defendant continued to abuse the victim after the initial incident "helps explain part of the reason why [the victim] didn't go tell his mom or the police[.]" That is, the state asserted that, under *Zybach*, the evidence was "not admissible for propensity, but it's admissible to show why [the victim] hadn't reported [defendant's conduct]."

In response to the state's arguments, defendant contended that, even if the evidence was relevant under *McKay* to show his sexual interest in the victim and under *Zybach* to explain the victim's delayed reporting, OEC 403 provided "another specific reason to keep [the evidence] out." OEC 403 provides, in part, that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury[.]" Defendant argued that the evidence of the Multnomah County incidents would be distracting and that its probative value was outweighed by the danger of unfair prejudice:

> "We have a jury that will be seated to hear a case concerning alleged sexual acts that occurred in Washington County. They're not here to determine acts that occurred in other counties and other occasions. So our concern for the defense your Honor is that if the State is allowed to go into sexual acts that occurred in other counties, that will very much taint the jury against the defendant and deprive him of a fair trial. And that there is very real danger * * * of unfair prejudice outweighing the probative value; certainly there may be probative value, but the prejudice is extremely high."

The trial court ruled that the evidence was relevant and admissible under both *McKay* and *Zybach*. Defendant then prompted the trial court to rule on his OEC 403

argument, and, after asking the parties their positions, the trial court ruled that the evidence was admissible:

"DEFENSE: Judge, I understand your ruling, of course with all due respect are you going to make a finding on my OEC 403 argument at all just so the record is complete?

"COURT: Okay, and [prosecutor], what's the State's position there then once again?

"STATE: Well the defense is arguing that it's unfairly prejudicial and the State's position is that the evidence is highly relevant and that the relevancy and the probative value greatly outweighs the prejudicial effect.

"COURT: Okay, anything else on that then?

"DEFENSE: No, I've made my argument your Honor.

"COURT: It's relevant and it outweighs the prejudicial effects."

The case proceeded to trial, during which the state presented a large amount of detailed evidence regarding the Multnomah County incidents. Defendant did not object to the amount or nature of that evidence at trial. The jury convicted defendant of all counts, and defendant appeals.

Defendant asserts that the trial court erred "in denying defendant's motion *in limine* and consequently admitting evidence of defendant's uncharged misconduct in another county." We review the denial of a motion *in limine* "in light of the record made before the trial court when it issued the order, not the trial record as it may have developed at some later point." *State v. Pitt*, 352 Or 566, 575, 293 P3d 1002 (2012); *State v. Johnson*, 281 Or App 51, 53, 380 P3d 1023 (2016).

Before admitting evidence of a defendant's uncharged misconduct, a trial court must, upon request, weigh the probative value of the evidence against the danger of unfair prejudice, as required by OEC 403. *See State v. Holt*, 279 Or App 663, 671, 381 P3d 897 (2016) (relying on *State v. Williams*, 357 Or 1, 19, 346 P3d 455 (2015), and *State v. Turnidge (S059155)*, 359 Or 364, 441-42, 374 P3d 853 (2016), for the proposition that, "[w]hen a trial court admits prior bad acts evidence in a child sexual abuse case, either for a

propensity purpose or a nonpropensity purpose, OEC 403 balancing is required, on a proper motion"); *see also State v. Brumbach*, 273 Or App 552, 563, 359 P3d 490 (2015), *rev den*, 359 Or 525 (2016) ("OEC 403 balancing is 'the only way that a court can ensure that the admission of "other acts" evidence is not unfairly prejudicial and a violation of "fundamental concepts of justice."'" (Quoting *Williams*, 357 Or at 18-19.)). Defendant argues that the trial court erred in two ways in conducting its OEC 403 balancing: (1) by failing to make an adequate record of its balancing, and (2) by concluding that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice.

We begin with defendant's argument that the trial court "failed to make a record reflecting its exercise of discretion under OEC 403," as required by *State v. Mayfield*, 302 Or 631, 733 P2d 438 (1987). In *Mayfield*, the Supreme Court set out a four-step process for OEC 403 balancing:

"First, the trial judge should assess the proponent's need for the uncharged misconduct evidence. In other words, the judge should analyze the quantum of probative value of the evidence and consider the weight or strength of the evidence. In the second step the trial judge must determine how prejudicial the evidence is, to what extent the evidence may distract the jury from the central question whether the defendant committed the charged crime. The third step is the judicial process of balancing the prosecution's need for the evidence against the countervailing prejudicial danger of unfair prejudice, and the fourth step is for the judge to make his or her ruling to admit all the proponent's evidence, to exclude all the proponent's evidence or to admit only part of the evidence."

302 Or at 645; *see also Williams*, 357 Or at 22 n 21 (when assessing the probative value of evidence, a court should determine "whether other evidence that does not carry the same risk of unfair prejudice is available to prove an element of the charged crime");[2] *id.* at 18 (describing "unfair

_____

[2] In *Williams*, the court suggested that the consideration of the proponent's need for the evidence under OEC 403 arises, at least in part, from the requirement of due process:

"For instance, in *Old Chief* [*v. United States*], 519 US [172,] 174, [117 S Ct 644, 136 L Ed 2d 574 (1997),] the United States Supreme Court held that a

prejudice" in the context of due process as "'the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged,'" including "'generalizing a defendant's earlier bad act into bad character and taking that as raising the odds that he did the later bad act now charged'" (quoting *Old Chief v. United States*, 519 US 172, 180, 117 S Ct 644, 136 L Ed 2d 574 (1997))).

The proponent of the evidence bears the burden of "convinc[ing] the court that the evidence not only is logically relevant but also that its probative value is substantial enough to outweigh any attendant danger of unfair prejudice." *Mayfield*, 302 Or at 645. "The judge errs if the judge fails to exercise discretion, refuses to exercise discretion or fails to make a record which reflects an exercise of discretion." *Id.*

In this case, the parties agree, and it is clear from the record, that the trial court conducted OEC 403 balancing. Nevertheless, defendant contends that the court erred in failing to make a more detailed record of its balancing process. According to defendant, the trial court committed reversible error because it "failed to make a record that reflects an exercise of discretion."

Defendant is incorrect. As set out above, the state identified the two theories of relevance upon which it was relying, and defendant responded that, even if the evidence was relevant, the trial court should exclude it under OEC 403 because it would distract the jury and was highly prejudicial. After the trial court ruled that the evidence was relevant for the reasons proffered by the state, defendant specifically asked the trial court to rule on his OEC 403 argument. In response, the state asserted that the "evidence

---

trial court had abused its discretion in rejecting the defendant's stipulation to an element of the charged crime (in that case, a prior conviction), when the stipulation met all the government's requirements for proving that element and the evidence proffered by the government 'raise[d] the risk of a verdict tainted by improper considerations.' The Court directed trial courts to weigh 'whether the danger of undue prejudice outweighs the probative value of the evidence in view of the availability of other means of proof and other facts appropriate for making decisions of this kind.' *Id.* at 184."

357 Or at 22 n 21.

is highly relevant and that the relevancy and the probative value greatly outweighs the prejudicial effect," and the trial court ruled, "It's relevant and it outweighs the prejudicial effects." Thus, given the parties' arguments, we understand the trial court to have accepted the state's argument that the evidence was relevant under *McKay* to show defendant's sexual predisposition toward the victim and under *Zybach* to show why the victim delayed reporting the initial incident. We further understand the trial court to have rejected defendant's argument that, even if the evidence was relevant, its probative value was substantially outweighed by the danger of unfair prejudice.

Although the trial court did not walk through the four-step *Mayfield* analysis on the record, the record is nevertheless sufficient in that it reflects that the trial court engaged in the "'conscious process of balancing the costs of the evidence against its benefits' that OEC 403 requires." *State v. Meyers*, 132 Or App 585, 589, 889 P2d 374 (1995) (quoting *State v. Pinnell*, 311 Or 98, 112-13, 806 P2d 110 (1991)). Here, understood in the context of the parties' arguments, the trial court's ruling is sufficient to allow us to evaluate whether, as defendant argues, the court abused its discretion in concluding that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. Accordingly, we turn to the merits of that argument.

Defendant argues that the trial court abused its discretion in refusing to exclude the evidence because, according to defendant, the evidence had little or no cognizable probative value under either of the state's two theories and any probative value it had was substantially outweighed by the danger of unfair prejudice. Regarding the probative value of the evidence, defendant argues that the state did not need the evidence to prove "defendant's sexual intent or purpose" under *McKay* because defendant "did not claim lack of sexual intent, which was undeniable given that one of the charged acts was oral sodomy." Defendant further argues that the state did not need the evidence to show why the victim delayed reporting, because the state had other evidence to explain the timing of the victim's report.

We begin with defendant's contention that the evidence had no cognizable probative value under *McKay*. As mentioned, defendant asserts that, even if the evidence was relevant for the purpose of showing defendant's sexual predisposition toward the victim, there was no need for the evidence here because it was obvious, and defendant did not dispute, that, if he committed the charged acts—that is, if he engaged in oral sex with or kissed the victim—he did so with a sexual purpose.[3] That position rests on the understanding that, under *McKay*, evidence of sexual predisposition toward the victim is relevant only to prove a defendant's sexual intent, not to prove that the defendant engaged in the charged conduct. The state responds that evidence of a defendant's sexual predisposition toward the victim is relevant to prove both conduct and intent. We agree with the state.

In *McKay*, the Supreme Court held that OEC 404(3) allows the introduction of evidence of other abuse of the victim by the defendant "to show the sexual inclination of [the] defendant towards the victim, not that he had a character trait or propensity to engage in sexual misconduct generally." 309 Or at 308. The court explained in *McKay* that it had reached the same conclusion in *State v. Pace*, 187 Or 498, 507, 212 P2d 755 (1949), a prosecution for statutory rape in which the court "held that evidence of other similar criminal acts with the same child is admissible to show the specific sexual predisposition of the defendant towards that child." *McKay*, 309 Or at 308. Referring to *Pace* and other similar cases decided before the adoption of OEC 404(3), the court explained, "The adoption of OEC 404(3) did not change the effect of the above cases." *McKay*, 309 Or at 308.

In *Pace*, the Supreme Court explained, "In prosecutions for statutory rape, evidence of other similar criminal acts with the same child is admissible to show the lustful

---

[3] Defendant also argues that the Supreme Court's holding in *McKay* was incorrect because a theory of relevance based on "sexual inclination" or "sexual interest" is actually just a propensity theory. He asserts that a "person's 'sexual inclination' towards a particular person is another way of saying that he or she is likely to act in conformity with that character trait." We reject that argument because the Supreme Court decided *McKay* and has not overruled it; thus, we are bound by its holding.

disposition of the defendant and *the probability of his having committed the particular act charged in the indictment.*" 187 Or at 507 (emphasis added). Thus, by adopting the rule stated in *Pace* and holding that OEC 404(3) "did not change" the rule, the court in *McKay* held that evidence of other sexual abuse of the victim by the defendant was relevant to prove that the charged act took place, not just to prove that the defendant acted with sexual intent.

Defendant is correct that, in this case, there was no need for the evidence of the Multnomah County incidents to prove that, if defendant engaged in the charged acts, he did so with sexual intent. However, as we have explained, under *McKay*, the evidence was also relevant to show that the charged acts took place. Whether the acts took place at all was the disputed issue in the case. The evidence was relevant for the nonpropensity purpose of proving defendant's sexual predisposition toward the victim, *McKay*, 309 Or at 308, and it had cognizable probative value on that theory of relevance.

We turn to defendant's argument that the evidence lacked cognizable probative value as to the victim's delayed reporting. As we have explained, the information before the trial court when it decided defendant's motion was that the three Multnomah County incidents occurred a few weeks after the charged incident at defendant's residence in Washington County, and the victim did not report defendant's conduct until after the Multnomah County incidents. The court decided that the evidence that defendant's abuse of the victim had continued after the Washington County incidents was relevant to help explain why the victim had not reported the initial incident when it took place. *See Zybach*, 308 Or at 99-100 (evidence of "the ongoing relationship" between the defendant and the victim was relevant to allow jury to "infer reasons for the delayed reporting"). On the record, it was reasonable for the court to decide that, in the course of assessing the credibility of the victim's allegations, the jury would wonder why the victim did not report the abuse earlier. Accordingly, on the record before it, the court could decide that the evidence would have cognizable probative value on a "delayed reporting" theory of relevance.

As mentioned, defendant argues that other evidence available to the state adequately explained the victim's delayed reporting. Specifically, defendant relies on evidence presented at trial that the victim was afraid of defendant and did not report any sexual contact with defendant until an officer confronted him with reports of the contact from others. As explained above, however, we are reviewing the trial court's denial of defendant's motion *in limine,* and defendant did not argue, at the time of the hearing on the motion, that the evidence should be excluded because the state had other evidence to explain the delayed reporting.

The disputed evidence had cognizable probative value on both of the theories of relevance on which the trial court relied in admitting it. Under these particular circumstances, it was not an abuse of discretion for the court to decide that the probative value of the evidence was not substantially outweighed by the risk of unfair prejudice from it.[4]

Affirmed.

---

[4] At the hearing on the motion *in limine,* the state did not give any information about how much or what kind of evidence it intended to present about the Multnomah County incidents, and defendant did not request the court to place any limits on its presentation of that evidence. Nor, as noted above, did defendant object to any of the evidence presented during trial. *See generally Pitt,* 352 Or at 573-74 (discussing advantages and disadvantages of motions *in limine* to exclude evidence; disadvantages include lack of concrete context for rulings and possibility that circumstances will change at trial); *Id.* at 574 ("[A] trial judge's decision to deny a pretrial motion to exclude evidence does not preclude a party from later objecting to the admission of the evidence during trial, nor does it prevent the trial judge from later revisiting the issue before or during trial. Accordingly, even if a trial judge has denied a pretrial motion to exclude evidence, the moving party (and other parties) are well advised to consider making the same or other objections, if warranted, when a party offers the evidence during trial.").