Submitted October 23, 2015, affirmed March 29, petition for review denied August 3, 2017 (361 Or 801)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## KENNETH EUGENE WOODS,
*Defendant-Appellant.*

Marion County Circuit Court
12C40333; A154144

393 P3d 1188

Peter Gartlan, Chief Defender, and Eric Johansen, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant. Ernest G. Lannet, Chief Defender,

Criminal Appellate Section, and Eric Johansen, Deputy Public Defender, Office of Public Defense Services, filed the supplemental brief.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Michael S. Shin, Assistant Attorney General, filed the briefs for respondent.

Before Ortega, Presiding Judge, and Lagesen, Judge, and Garrett, Judge.

## ORTEGA, P. J.

Defendant appeals his convictions for two counts first-degree sexual abuse, ORS 163.427, and one count of second-degree sodomy, ORS 163.395. He assigns error to the trial court's admission of evidence of his prior uncharged sexual conduct against the same victim. He also assigns error to the trial court's imposition of restitution. We conclude that the trial court did not err in admitting the prior uncharged sexual conduct evidence, and that the record contains evidence sufficient to uphold the trial court's imposition of restitution. We therefore affirm.[1]

Because the jury found defendant guilty, we state the relevant background facts in the light most favorable to the state. *State v. Nelson*, 282 Or App 427, 430, 386 P3d 73 (2016). The victim, M, was 12 years old at the time of the offenses at issue, and his father had sent him to live with his mother and stepfather, defendant, after M began having behavioral issues. M's mother was an alcoholic and M testified that he and defendant often spent time alone together away from M's mother because she sometimes became physically violent when she was drinking heavily. M testified that defendant often gave him alcohol when they were alone together and that, on five or six separate occasions, while the two were playing computer games and drinking alcohol, defendant touched M's genitals. M further testified that, on one occasion, defendant put his mouth on M's penis.

At trial, the state sought to introduce testimony from M's uncle about an earlier incident in which he observed defendant place his hand down M's pants. Defendant objected to that testimony, as "'prior bad acts evidence' offered for propensity purposes." The state responded that it was relevant and admissible under *State v. McKay*, 309 Or 305, 308, 787 P2d 479 (1990), for the nonpropensity purpose of showing defendant's sexual inclination toward the victim. The trial court overruled defendant's objection and allowed

---

[1] We reject, without discussion, defendant's second assignment of error that the trial court erred in failing to instruct the jury that the verdict must be unanimous. *See State v. Bowen*, 215 Or App 199, 202, 168 P3d 1208 (2007), *adh'd to as modified on recons*, 220 Or App 380, 185 P3d 1129 (2008), *rev den*, 345 Or 415, *cert den*, 558 US 815, 130 S Ct 52, 175 L Ed 2d 21 (2009).

M's uncle to testify about the incident. Defendant was convicted on all three counts.

On appeal, defendant assigns error to the admission of that testimony. First, he argues that to the extent the evidence of the earlier incident was relevant under *McKay* to show defendant's sexual inclination toward the victim, that evidence could be admitted only to show defendant's "sexual intent or sexual purpose towards the victim."[2] Accordingly, in defendant's view, the court was required to follow the procedural requirements that the Supreme Court established in *State v. Leistiko*, 352 Or 172, 282 P3d 857, *adh'd to as modified on recons*, 352 Or 622, 292 P3d 522 (2012), for certain evidence of intent. That is, defendant argues that the court first had to determine that the record could support a finding that the charged acts occurred before admitting the evidence, and second, it had to ensure through a limiting instruction "that the jury would not consider [the evidence of the earlier incident] unless and until it independently concluded that the charged acts were proven."

That argument is unpreserved. Defendant did not argue below that the trial court had to comply with the "procedures" established in *Leistiko*. He argued only that the evidence should be excluded because it was being offered by the state for pure "propensity purposes." Defendant, recognizing that he may have failed to preserve his argument, asks us to review for plain error. To qualify as plain error, an error must satisfy three factors: (1) it must be one of law; (2) it must be apparent, meaning that "the point must be obvious" and "not reasonably in dispute"; and (3) it must appear on the record. *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 381-82, 823 P2d 956 (1991). Defendant's plain error challenge fails on the second factor. Here, the state did not offer the evidence under a "doctrine-of-chances" theory of relevance. Instead, as we have already noted, the state offered the evidence pursuant to the holding in *McKay*, which allows the

[2] Defendant also argues that the Supreme Court's holding in *McKay* was incorrect because the theory of relevance it approves is actually a propensity theory that violates OEC 404(3). As we have recently noted, we must reject that argument "because the Supreme Court decided *McKay* and has not overruled it; thus, we are bound by its holding." *State v. Gonzalez-Sanchez*, 283 Or App 800 n 3, 391 P3d 811 (2017).

admission of such evidence, not under a "doctrine-of-chances" theory, but to show defendant's sexual predisposition toward a specific person. *See State v. Gonzalez-Sanchez*, 283 Or App 800, 808-09, 391 P3d 811 (2017) (holding that evidence of sexual predisposition for a victim is "relevant to prove that the charged act took place, not just to prove that the defendant acted with sexual intent"). As the Supreme Court recently explained in *State v. Turnidge (S059155)*, 359 Or 364, 434, 374 P3d 853 (2016), *cert den*, 137 S Ct 665 (2017), *Leistiko*, instructions are not required where evidence is not offered to prove intent under a doctrine of chances theory. Accordingly, the trial court's failure to comply with *Leistiko* is not error, let alone plain error. *See also State v. Clarke*, 279 Or App 373, 391, 379 P3d 674 (2016) (holding that failure to give *Leistiko* instructions when evidence was not admitted under a doctrine of chances theory was not "obvious" because it was not error).

Defendant challenges the admissibility of the evidence on two other grounds. First, he argues that, under *State v. Mayfield*, 302 Or 631, 645, 733 P2d 438 (1987), in order to admit evidence of a defendant's prior sexual conduct as evidence of his sexual disposition toward the victim, the court must balance the probative value of the evidence against the danger of unfair prejudice, pursuant to OEC 403.[3] However, defendant did not ask the trial court to engage in OEC 403 balancing with regard to that evidence, and we have consistently held that our review of that claimed error depends on defendant "mak[ing] such a challenge." *State v. Altabef*, 279 Or App 268, 272, 379 P3d 755 (2016), *rev den*, 360 Or 752 (2017); *see Turnidge*, 359 Or at 430 (admissibility of sexual predisposition evidence "depends on a trial court determination, in response to a proper motion, that the probative value of the evidence outweighs the danger of unfair prejudice under OEC 403"); *State v. Williams*, 357 Or 1, 19, 346 P3d 455 (2015) (a trial court must engage in the balancing anticipated by OEC 403 "[w]hen a party objects, under OEC 403, to 'other acts' evidence"); *State v. McMullin*, 269 Or App 859, 860 n 2, 346 P3d 611, *rev den*, 357 Or 640 (2015)

---

[3] OEC 403 provides, in pertinent part, that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice[.]"

(OEC 403 balancing was not preserved where the defendant neither sought a ruling nor objected to the admission of the evidence at issue on those grounds at trial).

Second, defendant contends that, under *Williams*, the trial court nevertheless was required to conduct such balancing in order to protect defendant's due process rights under the Fourteenth Amendment to the United States Constitution. Defendant is correct that the court in *Williams* held that, in a prosecution for child sexual abuse, "subjecting proffered 'other acts' evidence to OEC 403 balancing is a due process requirement." 357 Or at 18. Nevertheless, even an argument pertaining to due process rights must be properly preserved to be considered on appeal. *See State v. Lockridge*, 282 Or App 414, 418-19, 386 P3d 96 (2016) (holding that, because the defendant did not preserve the constitutional issue below, the court would not consider the defendant's contention that his due process rights were violated); *see also McMullin*, 269 Or App at 860 n 2 (refusing to consider the defendant's due process argument where the defendant had failed to raise it below). Because defendant neither requested OEC 403 balancing nor argued that due process required it below, we will not consider those arguments for the first time on appeal. We, therefore, conclude that the trial court did not err in admitting the uncle's testimony of defendant's prior sexual conduct with the victim.

Defendant also challenges the trial court's imposition of $85,611.73 in restitution, pursuant to ORS 137.106, reflecting charges for M's outpatient drug and alcohol treatment and residential mental health treatment that M received after defendant's criminal conduct. In seeking restitution, the state argued that, because of defendant's criminal conduct, M began abusing alcohol and other drugs and his mental health deteriorated, necessitating the treatment that he received. The court concluded that there was a causal relationship between defendant's criminal conduct and M's treatment bills, and concluded that restitution was appropriate. Defendant contends that the court erred because the record lacked sufficient evidence to demonstrate a causal relationship between defendant's criminal activities and M's treatment costs. As we explain below, the record supports

the conclusion that there was a causal relationship and, therefore, the trial court did not err in ordering restitution.

"[T]here are three prerequisites for an award of restitution: '(1) criminal activities, (2) [economic] damages, and (3) a causal relationship between the two.'" *State v. Kirkland*, 268 Or App 420, 424, 342 P3d 163 (2015) (quoting *State v. Dillon*, 292 Or 172, 181, 637 P2d 602 (1981) (footnote omitted). Defendant's sole contention on appeal against the restitution award is that the record does not support the trial court's conclusion that there was a causal relationship between the criminal activities and the economic damages. We review an order for restitution for legal error and we are "'bound by the trial court's factual findings if they are supported by any evidence in the record.'" *State v. McClelland*, 278 Or App 138, 141, 372 P3d 614, *rev den*, 360 Or 423 (2016) (quoting *State v. Pumphrey*, 266 Or App 729, 730, 338 P3d 819 (2014), *rev den*, 357 Or 112 (2015)). Consequently, in reviewing the trial court's order, we review whether the trial court's factual findings are supported by the evidence in the record, and whether those factual findings indicate a causal relationship between the criminal activities and the economic damages.

The trial court made the following pertinent factual findings:

"Prior to going to live with [defendant and M's mother], [M] had some behavioral issues, some mental health issues, specifically he had a prior diagnosis of ADHD and bipolar, diagnoses of which the defendant was aware at the time that [M] went to live with them.

"[M's] behavior with his aunt prior to going back to living with his mother and living with the defendant was he would act out, he was defiant, he had trouble doing his chores, he had trouble obeying curfew. In other words, he was like many, many, many normal teens. He was not someone that required inpatient hospitalization or any kind of treatment. He was not suicidal. He was not getting into trouble with the law. He was not stealing from stores. He did not have any issues with alcohol or substance abuse.

"When he went to live with the defendant, his mother * * * was an alcoholic, so the defendant essentially had an

alcoholic as a wife and then he committed the acts upon [M]."

Defendant argues, as he did to the trial court, that the state did not demonstrate to what extent M's problems were caused by M's mother's behavior as opposed to defendant's conduct. The court rejected defendant's argument, finding that defendant gave M alcohol and would then abuse him, and that "defendant was well aware of [M's mother's] alcohol abuse, and her actions with regard to [M] * * * made [M] nothing but more vulnerable to * * * defendant's singular acts of sexual abuse." Consequently, the court concluded that defendant's conduct caused the economic damages, because there was a "direct relation between damages claimed by the victim and defendant's [criminal conduct, and] the effect of * * * defendant's abuse exacerbated the victim's mental health issues[.]"

The record supports the court's findings that M's alcohol and substance abuse began after the abuse occurred and that his mental health likewise deteriorated significantly after the abuse occurred, and those findings support its conclusion that the relative contributions of M's mother's alcoholism and defendant's criminal conduct to M's post-abuse problems were not separable. Defendant, knowing of M's mental health status, M's mother's problems, and the effect that alcohol would have on M, took advantage of M's vulnerable condition in order to sexually abuse him. The trial court did not err in concluding that there was a causal relationship between defendant's criminal conduct and M's treatment costs.

Affirmed.