Submitted December 20, 2022, affirmed July 19, petition for review denied December 7, 2023 (371 Or 715)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

AN NGOC LE,
*Defendant-Appellant.*

Washington County Circuit Court
16CR78119; A175902

534 P3d 1097

Defendant appeals from a judgment convicting him of two counts of first-degree sexual abuse, ORS 163.427, assigning error to the admission of evidence of his prior uncharged acts under OEC 404(3) and OEC 403 and to the imposition of 75-month concurrent prison sentences on each count. According to defendant, the prior uncharged conduct, which was admitted under OEC 404(3) to show his sexual predisposition towards the alleged victim, constituted inadmissible propensity evidence. Relying on that propensity argument, he further argues that the court abused its discretion in concluding that the probative value of that evidence outweighed the risks of unfair prejudice. Defendant finally argues that his 75-month prison term sentences are constitutionally disproportionate, in light of *State v. Rodriguez/Buck*, 347 Or 46, 217 P3d 659 (2009). *Held*: The trial court did not err in admitting evidence of defendant's prior uncharged conduct under OEC 404(3), because evidence of a defendant's "sexual predisposition" towards the alleged "particular victim" is admissible as nonpropensity evidence under *State v. McKay*, 309 Or 305, 787 P2d 479 (1990). Because that evidence was admissible for a nonpropensity purpose, the trial court acted within the range of its legally permissible choices when conducting the OEC 403 balancing test and thus did not abuse its discretion. Moreover, although defendant had no criminal history, the conduct underlying his conviction—massaging the victim's legs, touching her clothed breast, and attempting to put his hand down her shirt—was not minimal and did not pass the *Rodriguez/Buck* proportionality test. Thus, the trial court did not err in applying the ORS 137.700(2)(a)(Q) "mandatory minimum" 75-month prison sentence requirement.

Affirmed.

Theodore E. Sims, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Shawn Wiley, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Patrick M. Ebbett, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Powers, Judge, and Hellman, Judge.

ORTEGA, P. J.

Affirmed.

**ORTEGA, P. J.**

Defendant appeals from a judgment convicting him of two counts of first-degree sexual abuse, ORS 163.427, and asserts three challenges to the underlying proceedings. In his first assignment, he argues that the trial court erroneously admitted evidence of his prior uncharged acts under OEC 404(3) and abused its discretion when later conducting the required OEC 403 balancing for unfair prejudice. In his second and third assignments, defendant argues that his 75-month prison sentences violate Article I, section 16, of the Oregon Constitution and the Eighth Amendment to the United States Constitution. We conclude that the trial court's admission of evidence regarding defendant's prior uncharged acts was not in error, that defendant's sentences do not violate the Oregon Constitution as interpreted in *State v. Rodriguez/Buck*, 347 Or 46, 217 P3d 659 (2009), and that he did not preserve his arguments under the Eighth Amendment. Accordingly, we affirm.

We evaluate the facts concerning a challenge to "the denial of a defendant's motion to exclude evidence of other acts in light of the record made before the trial court when it issued the order." *State v. Brumbach*, 273 Or App 552, 553, 359 P3d 490 (2015), *rev den*, 359 Or 525 (2016). We state the relevant facts in accordance with that standard and include additional facts and specific standards of review in our discussion of each assignment of error.

The state charged defendant in 2016 with two counts of first-degree sexual abuse, ORS 163.427, based on allegations that he had subjected a family friend's 13-year-old daughter, C, to sexual contact on two occasions, one by touching C's clothed chest and putting his hand on C's leg to massage her thigh and the other by touching C's breast.[1] A jury convicted defendant of both counts and the court sentenced him accordingly. We affirmed that judgment, but the Supreme Court later reversed and remanded both convictions for a new trial in light of *Ramos v. Louisiana*, 590 US ___, 140 S Ct 1390, 206 L Ed 2d 583 (2020).

---

[1] ORS 163.427(1) provides that "[a] person commits the crime of sexual abuse in the first degree when that person *** [s]ubjects another person to sexual contact and [t]he victim is less than 14 years of age[.]"

On remand, defendant moved *in limine* under OEC 403 to exclude evidence of two prior uncharged acts, which the state had introduced under OEC 404(3) during defendant's first trial to support the state's theory that defendant had touched C for a sexual purpose on the charged occasions.[2] One of those acts occurred at a dinner gathering of defendant's and C's families; defendant allegedly pulled C's dress away from her chest and looked down to see whether any food had gone down her dress. The other act concerned an occasion when defendant allegedly made comments about C's body relating to places where she had gained and lost weight.

In support of his motion, defendant argued that, under *State v. Johns*, 301 Or 535, 725 P2d 312 (1986), *overruled by State v. Skillicorn*, 367 Or 464, 479 P3d 254 (2021), evidence of his prior acts could not be admitted under OEC 404(3) to prove his sexual intent.[3] Defendant further argued that, if the evidence was admissible under OEC 404(3), it should be excluded under OEC 403 as unfairly prejudicial. The state contended that the evidence was admissible under OEC 404(3) and *State v. McKay*, 309 Or 305, 787 P2d 479 (1990), "to prove defendant's intent" or "[m]ore specifically" to "demonstrate[] *** defendant's sexual predisposition towards" C. *See id.* at 308 (holding that evidence that is used "to demonstrate the sexual predisposition" of a defendant towards a "particular victim" is admissible "to show the sexual inclination of the defendant towards the victim, not that [the defendant] had a character trait or propensity to engage in sexual misconduct generally"). The state further argued that OEC 403 would not bar the admissibility of that evidence as its prejudicial effect would not substantially outweigh its probative value.

At a hearing on the motion, both defendant and the state reiterated the arguments in their pretrial memorandums. The state argued that the disputed evidence was

---

[2] OEC 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice[.]" OEC 404(3) provides that "[e]vidence of other *** acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith" but "may, however, be admissible for other purposes, such as proof of motive, opportunity, [or] intent[.]"

[3] Defendant's motion *in limine*, as well as his second trial, occurred before the Supreme Court decided *Skillicorn*.

admissible under OEC 404(3) because it would provide valuable context demonstrating that defendant had an interest in C, which was relevant to whether he touched her with a sexual purpose on the charged occasions. The state reasserted that the evidence was "only prejudicial in that it show[ed] that [defendant] ha[d] a sexual purpose, but it's not unfairly prejudicial." Defendant continued to rely on *Johns* and characterized the probative value of the evidence as "innocuous," which the state adopted on rebuttal to argue that it carried no risk of unfair prejudice.

Agreeing with the state, the trial court denied defendant's motion:

"[C]onsidering the [s]tate's burden in proof, I don't see how they could possibly prove their case without creating the context that the predicate acts * * * happened. I'm not finding they did happen. I haven't heard any evidence on that point yet. But the [s]tate's entitled to do it.

"* * * [T]here's minimal, if any, unfair prejudice to this.

"And, as the facts come out, [defense counsel], I'm sure you'll be pointing out any discrepancies or inconsistencies in the facts. I mean, certainly able to split that off.

"So, I think that the *Johns* standards here are met. I'm going to allow those statements to come in or those incidents to come in."

Defendant's case proceeded to a bench trial. The state introduced the recording of C's interview at Child Abuse Response and Evaluation Service (CARES), during which C disclosed defendant's prior conduct of pulling her dress and looking down her body, and about which C also testified. In addition to C, seven other witnesses testified for the state, including C's high school friend, C's school counselor, the CARES interviewer, and C's mother, who testified to the following:

"Right when we got into the car, [C] related the story to me, saying that [defendant] had touched her in the thigh and chest. She was really scared and was crying.

"* * * * *

"I told her, 'Let's not try to remember that. Let's try to forget about it. Let's try to forgive him.'"

C also testified about defendant's charged conduct and stated that:

"[Defendant] walked into the room, and *** started talking to me ***.

"[He] talked about how he owned a salon, so I should come down and, like, he could massage me[,] while he was kind of squeezing my leg up and down. And I just was really uncomfortable in that moment and kind of in shock.

"*****

"[He touched my breast with] [h]is hand ***.

"He grabbed it [over my clothes]."

Regarding defendant's second charged conduct, C testified:

"We were walking all together, and then [defendant's son] was rushing ahead, so I was walking side-by-side with [defendant], and he put his arm around my shoulder. *** [H]is hand was kind of dropping down, and it fell *** onto the top of my breast, and he was kind of, like, waving it side to side, and it felt like he was trying to get underneath my shirt.

"*****

"I just felt fingers brushing the top of my breast."

Defendant, who did not testify, denied ever touching C for a sexual purpose. The court ultimately found defendant guilty of both counts of first-degree sexual abuse, finding C's testimony to be "very credible." The court explained:

"[C] had no motive to lie. She had lots of family and cultural pressure to make this whole thing just disappear under the rug, but she managed to thread the needle between doing what was right and remaining respectful, as best she could, to her elders.

"*****

"The context within which these activities took place leave no doubt that the purpose of his physical touching does qualify as sexual contact under the statute."

The court then sentenced defendant to concurrent 75 months' incarceration on each count, as required by ORS 137.700.

We begin with defendant's first assignment of error, which challenges the admission of evidence of his prior conduct under OEC 404(3) and OEC 403. We review for legal error a trial court's admission of uncharged misconduct evidence under OEC 404(3). *State v. Wright*, 283 Or App 160, 168, 387 P3d 405 (2016). "[W]e review the trial court's determination under OEC 403 for an abuse of discretion." *State v. Naudain*, 300 Or App 222, 227, 452 P3d 970 (2019), *aff'd*, 368 Or 140, 487 P3d 32 (2021).

Defendant first argues that the court improperly concluded that the evidence was relevant to show his sexual predisposition towards C under OEC 404(3). He contends that evidence of a defendant's sexual predisposition for a particular victim "is nothing more than propensity evidence" and should be excluded. He acknowledges that the Supreme Court held in *McKay* that evidence used "to demonstrate the sexual predisposition" of a defendant towards a "particular victim" is admissible "to show the sexual inclination of [the] defendant towards the victim," 309 Or at 308, and that we upheld that theory of admissibility in *State v. Gonzalez-Sanchez*, 283 Or App 800, 809, 391 P3d 811, *rev den*, 361 Or 645 (2017), but maintains that neither we nor the Supreme Court has explained how using evidence of prior acts to show sexual predisposition does not constitute propensity evidence. In defendant's view, *Gonzalez-Sanchez* was wrongly decided and has been undermined by *Skillicorn*.[4] Because *Skillicorn* is not directly on point, as it involved the doctrine of chances and this case does not, and *McKay*, which is on

---

[4] In *Skillicorn*, the Supreme Court held that evidence is not admissible under OEC 404(3) to prove motive, intent, lack of accident, and others under the doctrine of chances if it employs propensity reasoning. 367 Or at 493-94. In that case, the court addressed the admission of evidence of a defendant's "uncharged misconduct" for the purpose of showing the defendant's character generally, rather than for the purpose of showing a defendant's sexual predisposition toward a specific victim, as in *McKay*.

"The doctrine of chances is a theory of relevance based on the objective improbability of the recurrence of uncommon events. The idea underlying the doctrine is that, at some point, it becomes unlikely that each event in a series of similar events can have the same uncommon cause; therefore, if the number of events in a series claimed to have the same uncommon cause exceeds the number that can reasonably be expected to have that cause, a factfinder can infer that not all of the events actually have that cause."

*Skillicorn*, 367 Or at 484.

point, has not been overruled, *McKay* controls our decision. We thus reject defendant's argument, having rejected a similar argument in *Gonzalez-Sanchez*. *See* 283 Or App at 808 n 3.

Addressing the specific circumstances of defendant's case, we conclude that the evidence of defendant's other acts was admissible under OEC 404(3). As the record developed before the court's ruling on defendant's motion, the state offered evidence that defendant looked down C's dress and made comments about her body for the purpose of proving his "sexual predisposition towards" C, thereby offering context showing that the charged acts had a sexual purpose. The court admitted the evidence in accordance with the state's theory. Because the *McKay* theory of admissibility as to sexual predisposition toward a specific victim upheld in *Gonzalez-Sanchez* is still valid, the trial court did not err in ruling that the evidence was admissible under OEC 404(3).

Defendant further contends that "the court abused its discretion when it concluded [under OEC 403] that the propensity value of the disputed evidence outweighed the risks of unfair prejudice" against him, and that the court's error was not harmless. According to defendant, the court admitted the disputed evidence based on an erroneous "propensity" theory, and so its conclusion that the evidence's probative value exceeded the danger of unfair prejudice was a misapprehension of the OEC 404 legal principle. We are not persuaded.

"An abuse of discretion occurs when a court exercises its discretion to an end not justified by, and clearly against, evidence and reason." *State v. Sewell*, 257 Or App 462, 468, 307 P3d 464, *rev den*, 354 Or 389 (2013) (internal quotation marks omitted). "In evaluating a trial court's discretionary ruling under OEC 403, our role is to assess whether the court's decision falls within the range of legally permissible choices." *State v. Gibson*, 299 Or App 582, 589, 451 P3d 259 (2019), *rev den*, 366 Or 691 (2020). A court's decision fails to "fall within the range of legally correct choices and does not produce a permissible, legally correct outcome," when the "court's exercise of discretion proceeds

from a mistaken legal premise." *Nationstar Mortgage, LLC v. Hinkle*, 321 Or App 300, 311-12, 516 P3d 718 (2022).

Here, defendant's only challenge to the court's application of OEC 403 is founded on the premise that the disputed evidence was improperly admitted for a propensity purpose. However, as explained above, under *McKay*, its admission was for a nonpropensity purpose which was within the range of legally permissible choices and thus was not an abuse of discretion. Accordingly, the court did not err in admitting the evidence.

We turn to defendant's second and third combined assignments of error, challenging his concurrent 75-month prison term sentences as constitutionally disproportionate. We review such claims for legal error and, "[i]n conducting that review, we are bound by any findings of historical fact that the trial court may have made, if they are supported by evidence in the record." *State v. Hawthorne*, 316 Or App 487, 502, 504 P3d 1185 (2021), *rev den*, 369 Or 856 (2022). "In the absence of express findings, we * * * presume that the trial court resolved factual disputes consistently with its ultimate decision." *State v. Ryan*, 361 Or 602, 624, 396 P3d 867 (2017).

Defendant's first-degree sexual abuse convictions were subject to a mandatory minimum 75-month prison sentence under ORS 137.700(2)(a)(Q) (Ballot Measure 11). Defendant argued in the trial court that ORS 137.700 required sentence, as applied to his case, violate[d] Article I, section 16, in light of *Rodriguez/Buck*, 347 Or at 50 (holding that a 75-month sentence for first-degree sexual abuse offense was unconstitutionally disproportionate under the specific circumstances at issue). He maintained that a similar result should follow here because, as in that case, (a) his touching of C's "clothed breast" and later "brushing" of the top of her breast "with the tips of his fingers" was brief; (b) 75 months in prison for his conduct is disproportionate when compared to cases of sexual penetration or sodomy which carry similar sentences; and (c) defendant ha[d] no criminal history. *See Rodriguez/Buck*, 347 Or at 67-78 (assessing similar factors and reaching similar conclusions). According to defendant, his sentence "would shock the moral

sense of a reasonable person." He argued that he should be sentenced at his natural grid block of 8-I for Count 1, which he stated would carry a presumptive sentence of 16 to 18 months, and 8-D for Count 2, which would carry a presumptive sentence of 27 to 28 months.

In response, the state compared the facts of defendant's case to the facts in *Rodriguez* and *Buck*, arguing that a Measure 11 sentence for defendant was appropriate. The state argued that defendant's case involved a "more serious level of culpability" than in *Rodriguez/Buck*, considering that here defendant "was not in a consensual relationship with" C as in *Rodriguez*, "nor was the contact incidental" as in *Buck*; the state pointed out that defendant was instead a "trusted" family friend whose conduct consisted of "putting his hand down [C's] shirt and touching her breast" on "two separate occasions," after making her uncomfortable on prior occasions. According to the state, a mandatory minimum 75-month prison sentence would not "shock the conscience" to the level of being unconstitutionally cruel and unusual.

The trial court agreed with the state and decided to apply the 75-month prison term as required by ORS 137.700. The court explained:

> "The legislature has established a minimum sentence in this case of 75 months. [Defendant] makes a good argument that that is a harsh sentence under the circumstances of this case. It is, however, not so harsh as to shock the conscience of the [c]ourt."

On appeal, defendant maintains his argument that his 75-month prison sentences would "shock the moral sense" of reasonable people and are thus unconstitutionally disproportionate under Article I, section 16. *See* Or Const, Art I, § 16 ("Cruel and unusual punishments shall not be inflicted, but all penalties shall be proportioned to the offense."); *see also Rodriguez/Buck*, 347 Or at 57 (a punishment fails Article I, section 16, proportionality requirement if that punishment "*shock[s] the moral sense of all reasonable*" people (emphasis in original)).[5] The state likewise reasserts the arguments it offered below.

_____

[5] Defendant also argues for the first time in his brief on appeal that his 75-month prison sentences violate the Eighth Amendment to the United States

When applying ORS 137.700(2)(a)(Q), a trial court is permitted to depart from the "mandatory minimum" 75-month prison sentence requirement if it finds that the respective sentence would be unconstitutionally disproportionate; that is, when the court finds that a sentence would "shock the moral sense" of reasonable people. *State v. Wheeler*, 343 Or 652, 668, 175 P3d 438 (2007). *Rodriguez/ Buck* established three factors to be considered in making that determination: "(1) a comparison of the severity of the penalty and the gravity of the crime; (2) a comparison of the penalties imposed for other, related crimes; and (3) the criminal history of the defendant." 347 Or at 58.

In assessing the first factor in *Rodriguez/Buck*— comparing the penalty to the gravity of the offense—the court considered "the limited extent" of the "physical touching" in each case. *Id*. at 70. In *Rodriguez*, the defendant caused the back of a boy's head "to be in contact with her clothed breasts for about a minute," in a room of 30 to 50 other people; in *Buck*, the defendant "let[ ] the back of his hand remain when the girl leaned her clothed buttocks against his hand several times and later wip[ed] dirt off the back of her shorts with two swipes of his hand." *Id*. The court noted that, in *Rodriguez*, there was "no evidence" that any touching "involved fondling, stroking, rubbing, or palpating" and that, in *Buck*, the contact "did not involve fondling and was 'minimal.'" *Id*. at 70. In both cases, the "touchings were brief, if not momentary[,]" the "'intimate' body parts that were touched were clothed," and there was "no skin-to-skin contact" or other more invasive contact. *Id*. Determining that "*all* reasonable people" would agree that the conduct in which the defendants engaged therein was "far less severe, wrongful, immoral, or harmful to a victim than at least one other form of first-degree sexual abuse," the court concluded that the first factor indicated that the respective 75-month

Constitution. We do not address this issue because it was not preserved. *See* ORAP 5.45 ("No matter claimed as error will be considered on appeal unless the claim of error was preserved in the lower court[.]"); *see also State v. Link*, 367 Or 625, 639, 482 P3d 28 (2021) (Although a party need not "develop separate and distinct arguments under both constitutions in the trial court to preserve both issues for review on appeal" when "parallel constitutional provisions are at issue," the party "must frame its argument in a way that gives notice to the trial court and opponents that it is advancing its claim under both constitutional sources.").

prison sentences would be disproportionate to the gravity of the offenses. *Id.* at 71, 74 (emphasis in original).

Assessing the second factor—a comparison of the penalty to the penalties for related offenses—the court observed that related offenses, including second-degree sodomy (ORS 163.395) and second-degree rape (ORS 163.365), required 75-month prison sentences. It observed that, despite the fact that the first-degree sexual abuse offenses of Rodriguez and Buck were predicated on a "momentary" contact, the imposed sentences would "result[] in the *same* sentence" as if the defendants had sodomized or engaged in sexual intercourse with the children. *Id.* at 75. The court also compared the penalty at issue with the 75-month prison sentence for second-degree sexual abuse (ORS 163.425), observing that its "physical and sexual content, invasion of the body of the victim, and likely psychological impact, seem[ed] far removed from the touchings at issue" in *Rodriguez/Buck. Id.* at 76. Concluding that most people would consider the conduct in these related offenses "far more serious than the conduct of Rodriguez and Buck," the court saw this as "another indication that [75-month prison] sentences in these cases would be disproportionate to the offense." *Id.*

Finally, despite observing that "Measure 11's mandatory 75-month sentence for first-degree sexual abuse applies even if the defendant has had no prior criminal [history]," the court concluded that "the single occurrence of the wrongful conduct," in light of the defendants' lack of criminal history, "support[ed] the conclusion that [the defendants'] 75-month sentence[s]" did violate the constitutional proportionality requirement. *Id.* at 78 (noting that the defendants "not only had no prior convictions or charges of any kind," but "the brief touching occurred on a single occasion[,]" in contrast to "more common first-degree sexual abuse cases" where "the contact is *** more physically invasive and *** has occurred multiple times, rather than only once"). The court then held that all factors together indicated that the defendants' sentences were "unconstitutionally disproportionate to the offense" under Article I, section 16. *Id.* at 71, 78.

By contrast, in *Camacho-Garcia*, we concluded under *Rodriguez/Buck* that a 75-month sentence for first-degree sexual abuse was not disproportionate. 268 Or App 75, 341 P3d 888 (2014), *rev den*, 357 Or 164 (2015). The defendant in *Camacho-Garcia*, who was a "live-in parental figure" to his 12- or 13-year-old stepdaughter, "touched [her] breasts on two occasions, once over and once under her clothes." *Id.* at 76, 82. Because the touching was "more invasive than in *Rodriguez/Buck*," and "more likely to be psychologically damaging [as] it was repeated," and because of the defendant's role in the parties' relationship, we found that the defendant's sentence was not disproportionate when compared to other crimes. *Id.* at 83. Regardless of other factors, we concluded that the defendant's "sentence would not shock the moral sense of reasonable people and [wa]s not disproportionate under Article I, section 16." *Id.* at 84.

Here, we conclude that, like *Camacho-Garcia* and unlike *Rodriguez/Buck*, defendant's "sentence would not shock the moral sense of [all] reasonable people," though we acknowledge that in an age in which long sentences like those imposed under Measure 11 are coming under more scrutiny, the sentence would shock the moral sense of some. Nevertheless, unlike the conduct in *Rodriguez/Buck*, defendant's conduct here—massaging C's legs and touching her clothed breast on one occasion, and then attempting to put his hand down her shirt by "waving it side to side" such that he brushed the top of her breast with his fingers on another occasion—was more like a "rubbing" or "palpating" that was not present in *Rodriguez/Buck* and is not minimal. Like in *Camacho-Garcia*—which involved over- and under-clothes contact of the defendant's hand with the victim's breast—defendant's repeated conduct here was "more invasive than in *Rodriguez/Buck*" and "more likely to be psychologically damaging," especially in the context of his relationship with C. As such—and considering C's testimony that defendant's conduct made her "really uncomfortable" and "shock[ed]"—not "*all* reasonable people" would agree that defendant's conduct was less "wrongful, immoral, or harmful" to C to the level of being disproportionate to at least one other form of first-degree sexual abuse. Given all of these considerations, we conclude that defendant's lack of criminal history has

little weight in balancing the *Rodriguez*/*Buck* factors in this case.

Accordingly, we agree with the trial court that defendant's sentences did not violate Article I, section 16, and see no error in the court's refusal to depart from the ORS 137.700 minimum-sentence requirement.

Affirmed.